|  |  |  |
|---|---|---|
| **ROMMEL ESPIRITU** and **LEONARD HODGES,** individually and on behalf of all others similarly situated, | : : : : | Civil Action No.: 5:23-cv-00722-OLG |
| Plaintiffs, | : : : | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |
| v. | : : : | |
| **COLONIAL LOGISTICS, LLC, AMAZON.COM, INC.,** and **AMAZON LOGISTICS, INC.,** | : : : : | |
| Defendants. | : | |

**DECLARATION OF SARAH SCHALMAN-BERGEN IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION TO APPROVE THE SETTLEMENT AGREEMENT, AND MEMORANDUM OF LAW IN SUPPORT**

I, Sarah R. Schalman-Bergen, hereby declare that the following is true and correct:

1.      I am a member in good standing of the bar of the Commonwealth of Pennsylvania, and I have been admitted to practice in this Court. I am a partner at Lichten & Liss-Riordan, P.C ("LLR").  I previously was a shareholder at Berger Montague PC ("BMPC").  In this litigation, LLR, BMPC, and Willig Williams & Davidson ("WWD") ("Plaintiffs' Counsel") represented Plaintiffs and the Settlement Collective Members in the above-captioned matter.

2.      I submit this declaration in support of Plaintiffs' Unopposed Motion to Approve the Settlement Agreement.

3.      Plaintiffs' Counsel believes that the negotiated Settlement Agreement of this collective action wage and hour lawsuit provides an excellent settlement for the Plaintiffs and the Settlement Collective, with respect to their claims for unpaid overtime wages resulting from

Defendants' alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), as alleged in Plaintiff's Complaint.

**<u>Plaintiffs' Counsel's Experience in Wage and Hour Class and Collective Actions</u>**

4.      My primary practice area is employment law, and I have substantial experience litigating complex wage and hour class and collective litigations in the federal courts across the country.

5.      Lichten & Liss-Riordan, P.C. is a nationally recognized law firm dedicated to vindicating the rights of workers. The firm has pioneered the law on behalf of tipped employees who have been deprived of their gratuities, or the proceeds of service charges, in states throughout the country, including in Massachusetts, New York, Florida, Hawaii, and California. It has brought landmark litigation on behalf of Uber drivers, as well as workers for other so-called "gig economy" companies, and it has established and won numerous cases on behalf of workers who have been misclassified as independent contractors throughout the country, in a wide variety of industries, including the trucking, limo, cleaning, adult entertainment, cable installer, and call center industries.

6.      I became a partner at Lichten & Liss-Riordan, P.C. in January 2021. I have dedicated my career to creating systemic change for workers and individuals who are not being treated fairly. I have secured numerous significant settlements for the workers I represent, totaling well over $100 million. While representing workers in all types of industries, I have successfully challenged unlawful business practices involving last-mile logistics companies, cable installation companies, home health aide companies, meat and poultry plants, landscaping companies, in white collar jobs, and in the government. This litigation has resulted both in payment of back wages and in practice changes by the companies.

7. I am barred in Pennsylvania, and I am admitted to practice in the U.S. Supreme Court; U.S. Court of Appeals for the Third, Fourth, Sixth, Eighth, Ninth, and Eleventh Circuits; U.S. District Courts for the Eastern, Middle, and Western Districts of Pennsylvania, Southern, Western and Eastern Districts of Texas, District of Colorado, Eastern and Western Districts of Arkansas, Northern District of New York, Northern District of Illinois, Southern District of Indiana, Northern District of Ohio, Eastern District of Michigan, District of Nebraska, Western District of Tennessee,; and the U.S. Bankruptcy Court for the Eastern District of Pennsylvania.

8. I am a 2007 graduate of Harvard Law School, where I graduated *cum laude*. I routinely speak at conferences on issues relating to workers' rights. I currently serve on Cornell's ILR-Hotel School CIHLER Advisory Board, and I am a Board Member of the Keystone Research Center. I was named a 2020 Pennsylvania Super Lawyer, after being named as a Rising Star in every year over the prior decade. In 2021, I was named in Best Lawyers in America. In 2015, I was honored as a "Lawyer on the Fast Track" by The Legal Intelligencer. In 2010, I was honored as an "Unsung Hero" by the Legal Intelligencer, Pennsylvania's daily law journal, for my *pro bono* work.

9. Krysten Connon, another attorney at Lichten & Liss-Riordan, has worked on this matter with me at all times, and participated in all aspects of this matter since its inception. Krysten Connon is an experienced and dedicated attorney. She represents workers in disputes against their employers and primarily concentrates her practice on wage and hour class and collective actions arising under the Fair Labor Standards Act and state laws. Krysten has represented workers from a variety of backgrounds and in various industries, including cable and satellite installers, delivery drivers, and nurses. Krysten graduated *summa cum laude* from the Drexel University Thomas R. Kline School of Law, and she is a Phi Beta Kappa graduate of

the University of Maryland. Following law school, Krysten served as a federal judicial law clerk before joining the commercial litigation department of a national law firm, where she represented clients in complex commercial litigation and arbitration matters. Krysten also worked as a Staff Attorney at Women Against Abuse, where she litigated cases originating as domestic violence matters. Krysten was named a Pennsylvania Rising Star in 2020 and 2021 by Thomson Reuters' Super Lawyers. Prior to joining Lichten & Liss-Riordan, Krysten worked as an attorney in the Employment Rights Group of Berger Montague.

10. Prior to joining Lichten & Liss-Riordan, P.C. in January 2021, I was a Shareholder at Berger Montague PC, where I served as Co-Chair of the Employment Rights Department. Berger Montague specializes in class action litigation in federal and state courts and is one of the preeminent class action law firms in the United States. Berger Montague's Employment Department has considerable experience representing employees in class action and collective action litigation. Berger Montague has played lead roles in major class action cases for over 48 years, resulting in recoveries totaling many billions of dollars for the clients and the classes they represent.

11. In my prior role as Co-Chair of the Employment Rights Department at Berger Montague PC, I oversaw and directed the work of all class and collective wage and hour cases litigated by the Firm, including this case.

12. I have received high judicial praise for my legal representation of workers. For example, in a case involving home health aide workers unlawfully denied overtime pay, Judge Timothy R. Rice, United States Magistrate Judge for the U.S. District Court for the Eastern District of Pennsylvania, described me and my former department at Berger Montague as "some of the finest legal representation in the nation," who are "ethical, talented, and motivated to help

hard working men and women." *Gonzalez v. Veritas Consultant Group, LLC, d/b/a Moravia Health Network*, No. 2:17-cv-1319-TR (E.D. Pa. March 13, 2019). *See also Acevedo v. Brightview Landscapes, LLC*, No. 3:13-cv-2529, 2017 WL 4354809 (M.D. Pa. Oct. 2, 2017) (Mannion, J.) ("The court is confident that [Plaintiffs' Counsel] are highly skilled in FLSA collective and hybrid actions, as seen by their dealings with the court and the results achieved in both negotiating and handling the settlement to date."); *Morales v. Farmland Foods, Inc*., No. 8:08-cv-504, 2013 WL 1704722 (D. Neb. Apr. 18, 2013) (regarding the work of Berger Montague and other-co-counsel: "plaintiffs' counsel succeeded in vindicating important rights. … The court is familiar with "donning and doffing" cases and based on the court's experience, defendant meat packing companies' litigation conduct generally reflects "what can only be described as a deeply-entrenched resistance to changing their compensation practices to comply with the requirements of FLSA." (citation omitted). Plaintiffs' counsel performed a recognized public service in prosecuting these actions as a 'private Attorney General' to protect the rights of underrepresented workers. The plaintiffs have demonstrated that counsel's services have benefitted the class. … The fundamental policies of the FLSA were vindicated and the rights of the workers were protected.").

13.     I have been appointed Plaintiffs' Counsel in numerous class and collective action settlements securing valuable wages for employees under the FLSA and state wage and hour laws in Pennsylvania courts and throughout the country, both while a shareholder at Berger Montague and as a partner at Lichten & Liss-Riordan. *See, e.g., Hickman v. TL Transportation, LLC, Amazon.com, et al*., No. 2:17-cv-01038-GAM; 317 F. Supp. 3d 890; 318 F. Supp. 3d 718 (E.D. Pa. 2020) ($1.8m settlement on behalf of Delivery Associates in wage claim against third party company of Amazon; favorable opinions on liability, personal jurisdiction, individual liability, and

conditional certification); *Merino v. Wells Fargo & Co.*, 2:16-cv-07840-ES-MAH (D.N.J. 2020) (co-lead counsel in $35 million wage and hour settlement on behalf of personal bankers); *Holbert v. Waste Management, Inc.*, No. 2:18-cv-02649-CMR (E.D. Pa. 2019) (lead counsel in $14.7 million FLSA nationwide settlement on behalf of 31,000 waste collectors); *Devlin v. Ferrandino & Son, Inc.*, No. 15-4976, 2016 WL 7178338, *10 (E.D. Pa. Dec. 9, 2016); *Gongaware v. Amazon.com, et al.*, No. 1:18-cv-08358 (N.D. Ill. May 24, 2021) (Dkt. No. 100 at ¶ 14.); *Nicks v. Koch Meat Co., Inc.,* No. 16-cv-6446; 2016 WL 6277489; 260 F. Supp. 3d 942; 265 F. Supp. 3d 841 (N.D. Ill. 2019) ($1,832,000 settlement on behalf of chicken catchers in wage claim against national poultry processor; favorable opinions on jurisdiction, corporate entity structure; certification).

14.     Lichten & Liss-Riordan is also routinely appointed as Plaintiffs' Counsel in wage and hour class and collective actions around the country. *See, e.g., Scovil v. FedEx Ground Package Sys., Inc.*, 886 F. Supp. 2d 45, 47 (D. Me. 2012) ("Harold Lichten of the firm of Lichten & Liss–Riordan, P.C. has extensive experience in class action litigation, employment litigation…."); *Tavares v. S-L Distribution Co., Inc.*, 2016 WL 1743268, at *3 (M.D. Pa. May 2, 2016) (finding counsel at Lichten & Liss-Riordan … to have "considerable experience in employment rights litigation"); *Carrow v. FedEx Ground Package Sys., Inc.*, 2019 WL 7184548 (D.N.J. Dec. 26, 2019) (appointing attorneys at Lichten & Liss-Riordan as Plaintiffs' Counsel in wage-and-hour case in New Jersey); *Myers v. Jani-King of Philadelphia, Inc. et al.*, 2015 WL 1055700, * (E.D. Pa. Mar. 11, 2015) (appointing attorneys at Lichten & Liss-Riordan as Plaintiffs' Counsel in wage-and-hour case in Pennsylvania); *see also James v. Uber Techs. Inc.*, No. 19-CV-06462-EMC, 2021 WL 254303, at *11 (N.D. Cal. Jan. 26, 2021); *Mujo v. Jani-King Int'l, Inc.*, No. 3:16-CV-1990 (VAB), 2019 WL 145524, at *1 (D. Conn. Jan. 9, 2019); *DaSilva v. Border*

*Transfer of MA, Inc.*, 296 F. Supp. 3d 389 (D. Mass. 2017); *Vargas v. Spirit Delivery & Distribution Servs., Inc.*, 245 F. Supp. 3d 268 (D. Mass. 2017); *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2015 WL 5138097, at *1 (N.D. Cal. Sept. 1, 2015), *rev'd on other grounds*, 904 F.3d 1087 (9th Cir. 2018); *De Giovanni v. Jani-King Int'l, Inc.,* 262 F.R.D. 71 (D. Mass. 2009).

15.     Plaintiffs' Counsel in this matter also includes Ryan Hancock, of Willig Williams and Davidson. Willig, Williams & Davidson is one of the largest and most respected union-side labor law firms in the United States. Founded in 1979, our accomplished and diverse legal team focuses on representing labor unions, employee benefit funds, individual working people and their families. For over 40 years, our mission has remained the same – to level the playing field by helping unions and working families navigate a complex and sometimes intimidating legal system.

16.     Ryan Allen Hancock is a fierce advocate for the rights of individuals in employment law matters. He has successfully litigated a broad range of discrimination matters including claims involving religious accommodation, disability, race, sex, sexual orientation, and denial of employment based on a criminal record. He also represents clients in wage and hour and whistleblower matters and in contract disputes and formation and internal investigations. Ryan has served as co-lead counsel in several class action lawsuits and has appeared before a variety of federal district and appellate courts on behalf of plaintiffs. Ryan chairs the firm's Employment Law Group. Before joining Willig, Williams & Davidson, he was Assistant Chief Counsel with the Pennsylvania Human Relations Commission, the Commonwealth's civil rights enforcement agency. He is the principal author of the Commission's proposed policy entitled Disparate Impact Discrimination Implications Related to a Denial of Employment Based on a Criminal Record. After law school, Ryan clerked in Camden County Superior Court, Criminal Division for the Honorable David G. Eynon. He co-founded and is currently Board Chair for the Philadelphia

Lawyers for Social Equity (PLSE) and its Criminal Record Expungement Project (C-REP).

17. Plaintiffs' Counsel also includes Michaela L. Wallin and Alexandra K. Piazza of Berger Montague. Michaela Wallin is a Shareholder at Berger Montague in the Antitrust and Employment & Unpaid Wages practice groups. Michaela's work in the Antitrust group involves complex class actions, including those alleging that pharmaceutical manufacturers have wrongfully kept less expensive drugs off the market, in violation of the antitrust laws. In the Employment Law Group, Michaela focuses on wage and hour class and collective actions arising under federal and state law. Prior to joining Berger Montague, Michaela served as a law clerk for the Honorable James L. Cott of the United States District Court of the Southern District of New York. She also completed an Equal Justice Works Fellowship at the ACLU Women's Rights Project, where she worked to challenge local laws that target domestic violence survivors for eviction and impede tenants' ability to call the police. Michaela is a graduate of Columbia Law School, where she was a Harlan Fiske Stone Scholar. Michaela graduated magna cum laude from Bowdoin College, where she was Phi Beta Kappa and a Sarah and James Bowdoin Scholar.

18. Alexandra Piazza is Senior Counsel in the Firm's Employment & Unpaid Wages practice group. Alexandra has dedicated her career to representing workers throughout the country in complex class and collective actions arising under federal and state laws. She has extensive experience in all aspects of litigation, mediation, arbitration, and settlement, and she has been appointed class counsel in dozens of actions nationwide. Alexandra is a graduate of Villanova University School of Law and received her undergraduate degree from the University of Pennsylvania. In 2021 and 2023, Alexandra was named in the *Best Lawyers* list of "Ones to Watch." In 2022, she was named by Pennsylvania Super Lawyer as a "Rising Star."

19. Plaintiffs' Counsel has represented Delivery Associates ("DAs") in several cases

involving Amazon and Delivery Service Partners ("DSPs"), such that we have familiarity with the claims at issue in this case, as well as the data used to perform damages calculations.

**The Proposed Settlement is Fair and Reasonable**

20.     In this case, Plaintiffs' Counsel represented Plaintiffs and the Settlement Collective. I led and oversaw each of the mediations that ultimately led to the Settlement.

21.     On April 26, 2019, Plaintiffs, through counsel, notified Defendants of alleged wage-related claims they intended to file on behalf of themselves and a collective of similarly situated individuals, and invited Defendants to explore the potential for pre-litigation resolution of those alleged claims. The Parties agreed to engage in such discussions.

22.     The Parties engaged in an extensive alternative dispute resolution ("ADR") process in connection with these claims, which continued for more than three years. This process consisted of extensive ADR-related exchange of information and three mediation sessions overseen by an experienced wage and hour mediator, Dennis Clifford, Esq. The mediation sessions took place on July 28-29, 2021; October 27-29, 2021; and March 11, 2022, in Chicago, Illinois. The mediation sessions were attended by the mediator, counsel for the Parties, in-house counsel for Amazon, and counsel for and representatives of Colonial Logistics, LLC. Throughout this ADR process, the Parties, by and through their counsel, engaged in dozens of telephonic and video discussions, as well as written correspondence and negotiations overseen by Mr. Clifford.

23.     In order to appropriately inform the ADR process, the Parties exchanged data and information in connection with the threatened claims, including Amazon's delivery data for Delivery Associates ("DA") who were paid by Colonial Logistics, LLC and delivered packages to customers of Amazon.com, which Plaintiffs' Counsel reviewed and analyzed extensively. This

process allowed the Parties to assess the potential liability and possible damages for the asserted claims and engage in informed, good faith, arms-length settlement negotiations.

24. As a result of the ADR process (including exchange of information), mediations, and settlement negotiations, the Parties have agreed fully and finally to resolve this matter on the terms and conditions described herein.

25. Plaintiffs' Counsel has made a thorough and independent investigation of the facts and law relating to the allegations in this lawsuit. In agreeing to this Settlement Agreement, Plaintiffs have considered: (a) the facts developed during the mediation process and the law applicable thereto; (b) the risks of continued litigation; and (c) the desirability of consummating this Settlement according to the terms of this Settlement Agreement. Plaintiffs have concluded that the terms of this Settlement Agreement are fair and reasonable, and that it is in the best interests of Plaintiffs and the Settlement Collective Members to settle their claims against Defendants and the Released Parties (as defined in the Settlement Agreement). Defendants deny the allegations in this lawsuit and further deny any liability for any alleged wage and hour violations or failure to pay overtime compensation. Amazon further denies that it is a joint employer of the DAs.

26. With regard to the wage claims at issue in this case as set forth in the Complaint, the Parties disagreed on numerous legal and factual issues that would have impacted the case moving forward, including, but not limited to, the following:

- the extent to which DAs were compensated for all overtime hours worked;
- the appropriate rate at which overtime should have been paid when DAs worked more than forty (40) hours per week (i.e., half-time or time-and-one-half the regular rate);
- whether Defendants would be able to meet their burden of demonstrating good faith, such that it would avoid the imposition of liquidated damages;
- whether Amazon could be held liable for the alleged pay violations as a joint employer;
- whether Plaintiffs could obtain and maintain a collective action status of the action; and

- whether the Parties would appeal myriad legal or factual determinations, including collective action treatment, liability, and damages.

27. As a result of the ADR process (including the exchange of information), mediations, and settlement negotiations, the Parties have agreed fully and finally to resolve this matter on the terms and conditions described herein. Plaintiff's Counsel has made a thorough and independent investigation of the facts and law relating to the allegations in this lawsuit. In agreeing to this Settlement Agreement, Plaintiffs have considered: (a) the facts developed during the mediation process and the law applicable thereto; (b) the risks of continued litigation; and (c) the desirability of consummating this Settlement according to the terms of this Settlement Agreement. Plaintiffs have concluded that the terms of this Settlement Agreement are fair and reasonable, and that it is in the best interests of Plaintiffs and the Settlement Collective Members to settle their claims against Defendants and the Released Parties.

28. The Parties' investigations, substantial discovery, and extensive arms-length negotiations overseen by the mediator, Dennis Clifford, Esq., (who has substantial experience in this action, and who has mediated a number of cases in the Fifth Circuit and in this District) finally resulted in this Settlement Agreement.

29. The Gross Settlement Amount is based on an analysis of overtime hours that the Settlement Collective Members worked during the Relevant Time Period, as determined from the records provided. If the Settlement Agreement is approved, all Settlement Collective Members will receive a settlement award check, but only those Settlement Collective Members who sign, deposit and/or cash their Settlement Award will release claims against the Released Parties. Here, under the proposed allocation formula, each Settlement Collective Member will receive a minimum amount. In addition to the minimum payment, Settlement Collective Members will receive a *pro rata* portion of the Net Settlement Amount calculated as set forth in the Agreement.

11

30. Importantly, all Settlement Collective Members will automatically receive a settlement award without having to file a claim form and will not release any claims *unless* they cash or deposit their check.

31. The settlement provides meaningful certain relief rather than speculative relief over a course of an additional number of years of litigation, including potentially appeal.

32. The Settlement was reached after thorough investigation and analysis of the facts and law related to the claims, and continuous development of the facts through the mediation process, including Plaintiffs' Counsel's extensive review and analysis of the information and data received through the ADR process and interviews of Plaintiff.

33. The Settlement will result in significant amounts of compensation being paid to the workers who worked for relatively short periods of time.

34. The likely risks, complexity, delay and expense of proceeding with litigation are clearly outweighed by the substantial and immediate financial relief presented by this excellent settlement. While Plaintiffs believe the case was very strong, the outcome of the litigation is far from certain and, if not settled, would require significant factual development, and would be subject to the risk that even a favorable verdict at trial could be delayed based on any appeals by Defendants. And possibility that this matter, if not settled now, might not result in any recovery or might result in a recovery less favorable

35. The Gross Settlement Amount is an excellent recovery for the Settlement Collective members in view of the difficulties and risks that plaintiffs face in any complex wage and hour litigation to prevail on the merits and to obtain and maintain certification of a collective.

36. Based on my knowledge and expertise, I believe that the settlement is fair and reasonable and in the best interests of the Settlement Collective. The Settlement Agreement offers

significant advantages over the continued prosecution of this case. The settlement provides the Settlement Collective Members with a certain and substantial payment and averts years of continued complex, time-consuming, and expensive litigation, with no assurance of success. The Settlement will provide a substantial benefit to the Settlement Collective.

37. The Settlement also contemplates payments of additional payments to the Named Plaintiffs for a broader release against Defendants, and for their efforts in bringing and prosecuting this matter.

38. The proposed additional payments are justified by the broader general release of claims that each has agreed to as separate and independent consideration by signing the Settlement Agreement. The payments support this consideration that only the Named Plaintiffs are providing to Defendants. The payments and the terms of the release were specifically negotiated between counsel, and Plaintiffs' Counsel has advised the Named Plaintiffs of the consequences of this relief in exchange for the payments.

39. In addition, the proposed additional payments are justified by and reflect the additional benefits that Plaintiffs' diligent efforts have brought to the Settlement Collective Members. Plaintiffs took the significant risk of coming forward to represent the interests of their fellow employees. Plaintiffs worked with Plaintiffs' Counsel throughout the ADR process, providing critical information about their employment, about Defendants' policies and practices, and about the allegations in this lawsuit. They were actively involved throughout this matter. They agreed to put their names on a lawsuit in the public docket, and by doing so, they undertook a substantial direct and indirect risk in the community and in their field of employment by being the face of the litigation in order to participate in this case on behalf of their former fellow employees. Plaintiffs also communicated with Plaintiffs' Counsel throughout the settlement

process and spent substantial time reviewing and approving the proposed settlement agreement. As a result of Plaintiffs' active assistance in prosecuting this case, Settlement Collective Members will receive a significant benefit in the form of monetary compensation for alleged unpaid wages.

40.     The Parties have spent considerable time negotiating and drafting the Settlement Agreement, which ensures that all members of the Settlement Class are provided with Notice of the Settlement Agreement and its terms.  Moreover, Plaintiffs' Counsel will perform additional work that will be necessary to bring this settlement to a conclusion, including overseeing the administration of the settlement.

41.     The wage and hour issues in this matter are governed by the highly technical FLSA and federal regulations. Plaintiffs' Counsel focus their practices in this highly technical area and have litigated numerous cases under these wage and hour laws on both an individual and class/collective action basis.

42.     As noted above, Plaintiffs' Counsel are experienced class action attorneys with active and successful class action practices.  Plaintiffs' Counsel are experienced litigators who have substantial experience in litigating matters involving delivery drivers, including against the same Defendant at issue in this case. *See, e.g. Hickman v. TL Transportation, LLC, Amazon.com, et al.,* No. 2:17-cv-01038, Dkt. No. 130; *Hickman,*, 317 F. Supp. 3d 890 (E.D. Pa. 2018); and *Hickman,* 318 F. Supp. 3d 718 (E.D. Pa. 2018) (settlement on behalf of DAs in class and collective wage claim against Amazon and DSP; favorable opinions obtained on liability, personal jurisdiction, DSP owner individual liability, and certification); *Green v. Amazon.com, et al.*, No. 1:18-cv-1032 (M.D.N.C.) (DAs represented by Undersigned Counsel certified for settlement purposes on behalf of "all current and former [DAs] who were paid by Defendant Valdivia to deliver packages to customers of Amazon.com …"); *Gaines v. Amazon.com, LLC, et al.*, No. 1:19-

14

cv-00528-WMR (N.D. Ga. Jun. 22, 2020) (Dkt. No. 72) (DAs represented by Undersigned Counsel with collective certified for settlement purposes on behalf of "Plaintiff, Opt-In Plaintiffs, and all current and former [DAs] who were paid by Defendant on the Go to deliver packages to customers of Amazon.com …"); *Gongaware v. Amazon.com, et al.*, No. 1: 18-cv-08358 (N.D. Ill.) (DAs represented by Undersigned Counsel certifying for settlement purposes "a class and collective of … all [DAs] who were paid by Defendant Sheard-Loman Transport, LLC to deliver packages to Amazon customers …."); *Southern Star Express v. Page*, No. 5:19-cv-01423 (W.D. Tx. Mar. 31, 2021) (Dkt. No. 42) (DAs represented by Undersigned Counsel approving settlement on behalf of collective of "all current and former [DAs] paid by Southern Star to deliver packages to customers of Amazon…").

43.     Indeed, LLR has significant experience litigating issues related to delivery drivers. *See, e.g., Rittmann v. Amazon.com, Inc.,* 971 F.3d 904 (9th Cir. 2020) (affirming denial of defendant's motion to compel arbitration in wage and hour class action brought on behalf of delivery drivers); *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10 (1st Cir. 2020) (same); *Bedoya v. Am. Eagle Express Inc.*, 914 F.3d 812, 815 (3d Cir. 2019) (affirming that misclassified delivery drivers' claims under New Jersey's wage laws were not preempted by federal law); *Costello v. BeavEx, Inc.*, 810 F.3d 1045 (7th Cir. 2016) (affirming denial of defendant's motion for summary judgment and vacating District Court's denial of class certification in case brought on behalf of misclassified delivery drivers); *Chambers v. RDI Logistics, Inc.,* 65 N.E.3d 1 (Mass. 2016) (successfully overturning a grant of summary judgment to defendants in misclassification case brought by delivery drivers); *see also, e.g., Bedoya v. Am. Eagle Express, Inc.*, 2022 WL 3443983 (D.N.J. Aug. 17, 2022) (certifying class of delivery drivers under New Jersey Wage Payment Law).

44. Plaintiffs' Counsel undertook significant risk in agreeing to represent Plaintiffs. Plaintiffs' Counsel took on these matters at the exclusion of other matters. A significant portion of Plaintiffs' Counsel's practice involves matters representing delivery associates, and this time could otherwise have been spent on other matters.

45. Plaintiffs' Counsel agreed to represent Plaintiffs on a contingency fee basis. This arrangement was important and meaningful, as many workers, including Plaintiffs, could not otherwise afford to retain counsel at fixed hourly rates. Defendants are represented by some of the most talented labor and employment counsel in the country. The contingency arrangement permits a more even playing field than would otherwise be possible.

46. The contingency arrangement requires Plaintiffs' Counsel to bear a significant portion of the risk of loss to the attorneys who take the case. This is unlike the arrangements that are generally made for employers like Defendants, who pay their attorneys regardless of whether they win or lose.

47. In this case, Plaintiffs' Counsel would not have recovered any of their fees and out-of-pocket costs had they not obtained a settlement or prevailed at trial. This risk was meaningful, and further supports the requested fee.

48. Plaintiffs' Counsel collectively have spent hundreds of hours over the course of several years investigating and bringing this case to a successful settlement for the benefit of the Settlement Collective Members. Such efforts have included developing the legal theories of Defendants' wage and hour violations; conducting substantial legal and factual research on the alleged violations; engaging in extensive ADR-related discovery; performing an in-depth review of the data and information exchanged, including significant data analysis; attending three mediation sessions; conducting dozens of telephonic and video meet and confer sessions; engaging

16

in written correspondence and negotiations overseen by Mr. Clifford; and finalizing the Settlement Agreement. Moreover, Plaintiffs' Counsel will perform additional work that will be necessary to bring this settlement to a conclusion, including overseeing the administration of the settlement. If the Court seeks additional information about the time spent performing work related to this case, Plaintiffs' Counsel would be happy to provide it.

49. The risks Plaintiffs' Counsel undertook were real, and the resources that Plaintiffs' Counsel have dedicated to this action meant that such resources were not available to other cases.

50. I have received reported costs from BMPC and WWD. Based on those reported costs, Plaintiffs' Counsel's collective current costs total $4,907.74, which includes mediation costs, legal research costs, filing fees, and costs associated with printing and scanning. All of these costs are reasonable out-of-pocket expenditures of the type typically billed by attorneys to paying clients in the marketplace. All of these expenses were reasonable and necessary for the successful prosecution of this case. Plaintiffs' Counsel will continue to incur costs associated with this matter, including additional research charges as well as overseeing the administration of the Settlement. Plaintiffs' Counsel seeks reimbursement of their costs, up to a $15,000 cap. The balance above the costs incurred will be included in the distributions to the Settlement Collective.

Dated: July 12, 2023

_____
Sarah R. Schalman-Bergen

17